COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-06-463-CV

 

IN RE SPIRITAS RANCH                                                           RELATOR

 

ENTERPRISES,
L.L.P.

 

                                              ------------

 

                                    ORIGINAL PROCEEDING

 

                                              ------------

 

                                OPINION
ON REHEARING

 

                                              ------------

Introduction

After reconsidering our prior
opinion on the Town of Little Elm=s motion for rehearing, we deny the motion, but we withdraw our
opinion and judgment of February 22, 2007 and substitute the following in their
place.








This original proceeding
concerns the Town of Little Elm=s proposed annexation of property owned by relator Spiritas Ranch
Enterprises, L.L.P.  The main issue is
whether the trial court should have issued a temporary restraining order (TRO)
prohibiting the Town from annexing or taking steps to annex Spiritas=s property until after Spiritas had been given the opportunity to
arbitrate whether the property could be annexed without inclusion in the Town=s three-year annexation plan. 
For the reasons set forth below, having considered all of the filings
from both parties,[1]
we determine that Spiritas is entitled to mandamus relief.

Background Facts








In late September 2006, the
Town began the process of annexing approximately 1,103 acres of nonresidential
properties located within its extraterritorial jurisdiction[2]
along State Highway 380 pursuant to section 43.052(h)(1) of the local
government code, which allows largely undeveloped property to be annexed
without inclusion in the Town=s three-year annexation plan.[3]  Tex.
Loc. Gov=t Code Ann. ' 43.052(h)(1) (Vernon Supp. 2006). 
Spiritas owns multiple tracts[4]
included within this proposed fast-track annexation.[5]  In October 2006, in accordance with the
statutorily-required annexation process applicable to fast-track annexations,
the Town sent written notice to landowners of its intent to annex their
properties.  See id.
' 43.062.  Between November 1 and
November 10, 2006, it posted public hearing notices in accordance with the
statute.  Id. ' 43.063.








On November 6, 2006, Spiritas
sent a letter to the Town asking that its property be included in the Town=s three-year annexation plan rather than being annexed according to
the fast-track procedures.  The Town
Council held public hearings on the fast-track annexation ordinance on November
21, 2006,[6]
but it did not vote on Spiritas=s request at that time because there was not enough time to place it
on the agenda.  At a subsequent meeting
on December 5, 2006, the Town Council voted not to include Spiritas=s land in the three-year annexation plan and instead to proceed with
the fast-track annexation of Spiritas=s property.  Accordingly, on
December 6, 2006, Spiritas requested that the Town arbitrate the issue under
section 43.052(i) of the local government code. 
Id. '
43.052(i).  In a December 7, 2006 letter
to Spiritas, the Town=s attorney
confirmed that the Council would consider whether to arbitrate at a meeting
scheduled for December 19, 2006.

The agenda for the December
19 Council meeting was published on Friday, December 15, 2006.  Item 11.e. was titled, ADiscussion and consideration to adopt Ordinances No. 809 an Ordinance of the Town of Little Elm,
Texas annexing territory described in Exhibit A attached hereto to the Town,
and extending the boundary limits of the Town so as to include the said
property within the corporation limits of the Town . . . .@  Item 12 read as follows:  








The
Town Council will hold a Closed (executive) session meeting
pursuant to the provisions of Chapter 551, Texas Government Code, . . . in
accordance with the authority contained in:

 

Section 551.071 Consultation with Town Attorney to receive
legal advice concerning Spiritas Ranch Enterprises L.L.P. request for
arbitration petition regarding the Little Elm US 380 annexation, and
contemplated litigation.

 

Discussion
and consideration to take any action necessary as the result of
the Closed (executive) session:

 

Section 551.071 Consultation with Town Attorney to receive
legal [advice] concerning Spirit[a]s Ranch Enterprises L.L.P. request for
arbitration petition regarding the Little Elm US 380 annexation, and
contemplated litigations.

 

The last page of the agenda contains a notation
that A[p]ursuant to the Texas Open Meeting Act . . . , one or more of the
above items may be considered in executive closed session to the public.  Any decision on any item will be taken or
conducted in open session following the conclusion of the executive closed
session.@  Accordingly, the agenda
appeared to allow the Council to vote on whether Spiritas=s property should be annexed before considering Spiritas=s request to arbitrate the matter.








On Monday, December 18, 2006,
Spiritas filed suit against the Town, asking for a declaratory judgment and a
temporary and permanent injunction.  More
specifically, Spiritas asked the trial court to enjoin the Town from taking any
action to directly or indirectly annex the property according to the fast-track
annexation procedures until arbitration is completed under sections 43.052(i),
43.0565, and 43.0564 of the local government code.  Id. '' 43.052(i), .0565, .0564. 
Spiritas also filed an application for a TRO, asking the trial court to
issue a TRO restraining the Town from directly or indirectly taking any steps
to annex the property before notice could be given and a hearing held on
Spiritas=s temporary injunction request. 
That same day, the Town filed a response, the trial court held a hearing
at which it heard argument from both parties, and the trial court denied the
TRO application.  Because the Town
Council meeting was to occur at 7:00 p.m. the next day, Spiritas did not have
enough time to schedule a hearing on its request for temporary injunctive
relief.  See Tex. R. Civ. P. 21 (requiring at least
three days= notice of
hearing unless shortened by trial court); Tex. Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 229 (Tex. 2004) (noting rule 21's three-day notice
period).








On December 19, 2006,
Spiritas filed a petition for writ of mandamus, asking this court to compel the
trial court to reverse its order denying the TRO and order the trial court to
enter a TRO Amaintaining
the status quo@ and Aprecluding [the Town] . . . from taking any action to annex the
[p]roperty until the trial court can determine the merits of Spiritas=s temporary injunction request.@  Spiritas also requested that
this court issue temporary emergency relief prohibiting the Town from taking
any action to annex the property while Spiritas=s petition was pending.  After
reviewing Spiritas=s motion,
petition, and a faxed response from the Town, we issued an order granting
Spiritas=s motion for emergency temporary relief.

In accordance with our order,
the Town Council did not vote on the proposed fast-track annexation ordinance
at the December 19 meeting.  However, the
Town did vote to arbitrate the dispute with Spiritas.  On December 22, 2006, we received an Agreed
Motion for Reciprocal Temporary Injunctive Relief in which the parties informed
this court of an issue that had not yet been presented to this court or the
trial court:  that Spiritas had submitted
two preliminary plat applications to the Town regarding the property included
in the proposed fast-track annexation. 
Accordingly, the parties agreed that while this court=s stay was in effect, not only would the Town be prohibited from
taking any action to annex the property, but Spiritas would refrain from
submitting any permit applications, except for the two pending preliminary plat
applications, with respect to the property and from asserting any rights under
section 43.002(a) of the local government code with respect to the two pending
applications.  Tex. Loc. Gov=t Code Ann. ' 43.002(a).








Because it was unclear
whether the parties= agreement
was intended to encompass the temporary injunctive relief requested by Spiritas
in its original petition in the trial court, and because the issue had not been
ruled upon by the trial court, we abated this original proceeding for the trial
court to enter an order based on the parties= agreement.  When we received a
copy of the agreed order entered by the trial court,[7]
and subsequent correspondence from the parties related to other motions pending
in this court, it became clear that the injunctive relief agreed to by the
parties was applicable only during the pendency of this court=s December 19 stay order and did not encompass the temporary
injunctive relief requested by Spiritas in the trial court.  Accordingly, it is necessary for us to
address Spiritas=s two
issues: (1) whether the trial court abused its discretion by denying Spiritas=s application for a TRO enjoining the Town from attempting to annex
the property until an evidentiary hearing could be held on Spiritas=s request for a temporary injunction and (2) whether Spiritas has an
adequate remedy by appeal.[8]








In its response to Spiritas=s petition for writ of mandamus, the Town contends that this court
lacks jurisdiction over this original proceeding and that Spiritas lacks
standing to bring it.  Because an
analysis of the jurisdictional and standing issues necessarily includes a
discussion of the merits of Spiritas=s complaintCand because
we conclude that we have jurisdiction and that Spiritas has standingCwe will review those typically threshold issues after we have reviewed
the merits of Spiritas=s complaint.

Standard of Review

Mandamus
relief is proper only to correct a clear abuse of discretion when there is no
adequate remedy by appeal.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135‑36 (Tex. 2004) (orig.
proceeding).








A trial court clearly abuses
its discretion when it reaches a decision so arbitrary and unreasonable as to
amount to a clear and prejudicial error of law. 
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig.
proceeding).  With respect to the
resolution of factual issues or matters committed to the trial court=s discretion, we may not substitute our judgment for that of the trial
court unless the relator establishes that the trial court could reasonably have
reached only one decision and that the trial court=s decision is arbitrary and unreasonable.  Id. at 839-40.  This burden is a heavy one.  In re CSX Corp.,  124 S.W.3d 149, 152 (Tex. 2003) (orig.
proceeding).  Our review is much less
deferential with respect to a trial court=s determination of the legal principles controlling its ruling because
a trial court has no discretion in determining what the law is or in applying
the law to the facts.  Walker, 827
S.W.2d at 840.  Thus, a clear failure by
the trial court to analyze or apply the law correctly will constitute an abuse
of discretion and may result in mandamus. 
Id.

Absent extraordinary
circumstances, mandamus will not issue unless relator lacks an adequate remedy
by appeal.  In re Van Waters &
Rogers, Inc.,145 S.W.3d 203, 210-11 (Tex. 2004) (citing Walker, 827
S.W.2d at 839).  Determining whether an
appeal is an adequate remedy requires the careful balance of jurisprudential
considerations.  Prudential Ins. Co.,
148 S.W.3d at 135-36.  An appellate
remedy is adequate when any benefits to mandamus review are outweighed by the
detriments.  Id.  When the benefits outweigh the detriments, we
must conduct further analysis.  Id.  Whether an appellate remedy is adequate
so as to preclude mandamus review depends heavily on the circumstances
presented.  Id. at 137.  An appeal is inadequate for mandamus purposes
when parties are in danger of permanently losing substantial rights, such as
when the appellate court would not be able to cure the error, the party=s ability to present a viable claim or defense is vitiated, or the
error cannot be made part of the appellate record.  Van Waters & Rogers, 145 S.W.3d
at  210-11; Walker, 827 S.W.2d at
843-44.








Applicable Law

The purpose
of a TRO is to preserve the status quo, which the supreme court has defined as Athe last, actual, peaceable, non‑contested status which preceded
the pending controversy.@  In re Newton, 146 S.W.3d 648, 651
(Tex. 2004) (orig. proceeding) (quoting Janus Films, Inc. v. City of Fort
Worth, 163 Tex. 616, 358 S.W.2d 589, 589 (1962)).  A TRO restrains a party from acting only
during the pendency of a motion for temporary injunction, i.e., until a full
evidentiary hearing on the motion occurs. 
Del Valle ISD v. Lopez, 845 S.W.2d 808, 809 (Tex. 1992); see
Tex. R. Civ. P. 680.  A TRO may not be granted without notice to
the adverse party unless it clearly appears from specific facts shown by
affidavit or by the verified complaint that immediate and irreparable injury,
loss, or damage will result to the applicant before notice can be served and a
hearing had thereon.  Tex. R. Civ. P. 680.













Section 43.052(c) of the
local government code requires a municipality to create and make known to the
public a formal three‑year annexation plan.  Tex.
Loc. Gov=t Code Ann. ' 43.052(c); JNC Partners Denton LLC v. City of Denton, 190
S.W.3d 790, 792 (Tex. App.CFort Worth 2006, pet. filed). 
The plan gives three years= advance notice of the municipality=s intention to annex to persons whose land is described in the
plan.  Tex.
Loc. Gov=t Code Ann. ' 43.052(c); JNC Partners Denton LLC, 190 S.W.3d at 792.  An exception to this rule, section
43.052(h)(1),[9]
provides that a municipality is not required to include sparsely populated and
predominately unimproved land in its three‑year plan.  Tex.
Loc. Gov=t Code Ann. ' 43.052(h)(1); JNC Partners Denton LLC, 190 S.W.3d at 792.  Further, when proceeding under this
fast-track method, the municipality may annex the land as directed by sections
43.061‑.065, which require substantially shorter notice than three
years.  Tex.
Loc. Gov=t Code Ann. '' 43.052(h)(1) (providing that annexation outside a three‑year
plan is permitted if the area contains Afewer than 100 separate tracts of land on which one or more
residential dwellings are located on each tract@),  43.061‑.065 (requiring
advance notice of intention to annex of only thirty days and completion of
annexation within ninety days).  When a
landowner is notified that a municipality intends to annex the landowner=s property under section 43.052(h)(1)=s fast-track annexation procedures and believes the procedure to be in
violation of section 43.052(c), the landowner may petition the municipality
under section 43.052(i) for inclusion of the land in the three‑year
annexation plan so that fast-track annexation of that land would be unavailable
to the municipality.  Id. ' 43.052(i); JNC Partners Denton LLC, 190 S.W.3d at 792.  If the municipality Afails to take action on the petition,@ the statute provides that the landowner may request arbitration.  Tex.
Loc. Gov=t Code Ann. ' 43.052(i); JNC Partners Denton LLC, 190 S.W.3d at 792.  The full text of section 43.052(i) provides
as follows:

A municipality may not circumvent the
requirements of this section [requiring inclusion of property in the
municipality=s
three-year annexation plan] by proposing to separately annex two or more areas
described by Subsection (h)(1) if no reason exists under generally accepted
municipal planning principles and practices for separately annexing the
areas.  If a municipality proposes to
separately annex areas in violation of this section, a person residing or
owning land in the area may petition the municipality to include the area in
the municipality's annexation plan.  If
the municipality fails to take action on the petition, the petitioner may
request arbitration of the dispute.  The
petitioner must request the appointment of an arbitrator in writing to the
municipality.  Sections 43.0564(b), (c),
and (e) apply to the appointment of an arbitrator and the conduct of an
arbitration proceeding under this subsection. 
Except as provided by this subsection, the municipality shall pay the
cost of arbitration.  If the arbitrator
finds that the petitioner's request for arbitration was groundless or requested
in bad faith or for the purposes of harassment, the arbitrator shall require
the petitioner to pay the costs of arbitration.

 

Tex. Loc. Gov=t Code Ann. ' 43.052(i).

Analysis








Spiritas contends that the
trial court should have issued a TRO pending an evidentiary hearing on its
request for temporary injunctive relief because in the absence of a TRO, the
Town was planning to vote to annex the property under the fast-track annexation
procedure before voting on the arbitration issue (and before the trial court
had the opportunity to decide whether Spiritas was entitled to arbitration),
thus mooting the controversy and extinguishing Spiritas=s right to arbitration under section 43.052(i).  The Town responds that (1) this court lacks
jurisdiction to enjoin, or order the trial court to enjoin, the Town from
enacting an ordinance under the separation of powers provision in the Texas
Constitution, and (2) that Spiritas lacks standing to bring this original
proceeding and the underlying suit, which must instead be brought in a quo
warranto proceeding.

Whether Controversy is Moot








As a threshold matter, the
Town contends that this original proceeding is moot because it has now agreed
to arbitrate the dispute with Spiritas. 
However, Spiritas has provided this court with correspondence from the
Town, to which the Town has not objected, indicating that the Town=s position is that after this court=s stay is lifted, it can proceed to annex the property under the
fast-track annexation procedure at any time while the arbitration on whether
Spiritas=s property should be included in the Town=s three-year annexation plan is pending, presumably including until
Spiritas can schedule a hearing on its request for temporary injunctive
relief.  In response to email
correspondence from Spiritas=s attorney noting that it appears this court assumed in its December
28, 2006 abatement order that the Town Awill not annex the property until the arbitration is completed,@ the Town=s attorney
wrote, AWe cannot agree to that.  While
the arbitration will probably be concluded before the issue of whether the Town
can annex before arbitration can be decided, my marching orders from the Town
were to fight for the right to annex, while still engaging in arbitration.@  Accordingly, it appears the
Town intends to resume its efforts to complete a fast-track annexation before
Spiritas can obtain a hearing on its request for temporary injunctive relief.[10]








Therefore, were we to dismiss
this original proceeding as moot, the parties would still be faced with the
same live controversy:  whether the Town
should be enjoined from taking steps to annex the property pending a hearing on
Spiritas=s request for temporary injunctive relief, at which the trial court
will determine whether the Town should be enjoined from annexing, or taking
steps to annex, the property while arbitration is proceeding and pending a
final trial on the merits.  The Town=s refusal to refrain from attempting to annex the property until then
thus prevents this controversy from being moot. 
See In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737
(Tex. 2005) (orig. proceeding) (stating that a case becomes moot if a
controversy ceases to exist between the parties at any stage of the
proceedings); Williams v. Lara, 52 S.W.3d 171, 184 (Tex. 2001).

Whether Fast-track Annexation Before
Arbitration is Proper

In the absence of specific
legislative authorization, the only proper method for attacking the validity of
a city=s annexation of territory once that property has been annexed is
through a quo warranto proceeding,[11]
rather than a suit by a private citizen, unless the annexation is wholly
void.  City of Wichita Falls v. Pearce,
33 S.W.3d 415, 417 (Tex. App.CFort Worth 2000, no pet.). 
Thus, once a property is annexed, a landowner has no private recourse
against the annexing municipality for irregularities in the annexation.













Section 43.052(i), which the
legislature enacted in 1999,[12]
states that a landowner may elect arbitration after it has met with no success
on its petition that a municipality include an area proposed to be annexed
within the three-year annexation plan.  Hughes
v. City of Rockwall, 153 S.W.3d 709, 714 (Tex. App.CDallas 2005, pet. granted); see also JNC Partners Denton LLC,
190 S.W.3d at 793 (adopting Hughes court=s interpretation of section 43.052(i)).  Once that occurs, the landowner and the
municipality shall proceed with arbitration as specified by section 43.052(i)
pursuant to section 43.0564(b), (c), and (e), which address appointment of the
arbitrator and the conduct of the arbitration. 
Tex. Local Gov=t Code Ann. '' 43.052(i), 43.0564(b), (c), (e); Hughes, 153 S.W.3d at
714.  Accordingly, a private landowner has
a statutorily-created right to arbitrate a dispute under section 43.052(i)
regarding whether its land should be included in a municipality=s three-year annexation plan,[13]
and, in accordance with that right, may maintain an action to compel
arbitration under section 43.052(i) without the necessity of a quo warranto proceeding.  See Hughes, 153 S.W.3d at 713-14; see
also JNC Partners Denton LLC, 190 S.W.3d at 793.[14]








Thus, when section 43.052(i)
is read together with section 43.052(b) and (c)Crequiring generally that property be included in a municipality=s three-year service plan before annexationCand section 43.052(h)(1)Cproviding an exception to the three-year service plan requirement,[15]
it is clear that a party has a privately enforceable, statutory right to
arbitrate a dispute if it meets the requirements of section 43.052(i) before
fast-track annexation actually occurs. 
This timing is important because after annexation occurs, an arbitration
would be meaningless as a landowner could not maintain a private action to
disannex the property.  Tex. Loc. Gov=t Code Ann. ' 43.141C.145 (Vernon
1999 & Supp. 2006).  Chapter 43 does
not include a corresponding right allowing an arbitrator to order disannexation
if he or she finds in favor of the private landowner.  Thus, by voting to adopt a
fast-track annexation of the property while a landowner=s request for arbitration under section 43.052(i) was pending, a
municipality could effectively cut off a landowner=s right to pre-annexation arbitration; a post-annexation arbitration
would be moot, as the property would have been annexed without being included
in the three-year plan.[16]








Here, preserving the status
quo means prohibiting the Town from annexing, or attempting to annex, Spiritas=s property pending a hearing on the merits of the temporary injunction
request so that Spiritas=s right to
pre-annexation arbitration is not lost before such a hearing can be held.[17]  Thus, we conclude that in order to preserve
the status quo between the parties, the trial court should have granted
Spiritas=s application for a TRO.

Adequacy
of Remedy by Appeal

Having
determined that the trial court should have issued the TRO in accordance with
Spiritas=s request, we also determine that Spiritas did not have an adequate
remedy by appeal.  Our supreme court has
held that mandamus relief is available when a trial court has granted a TRO.  Newton, 146 S.W.3d at 652‑53
(holding that mandamus available because TRO is generally not appealable and
impending election would have concluded before appeal from trial court=s ruling was possible); In re Tex. Natural Res. Conservation Comm'n,
85 S.W.3d 201, 207 (Tex. 2002) (orig. proceeding) (holding that Amandamus is available to remedy a [TRO] that violates Rule 680=s time limitations@).  The same reasoning applies
here to the trial court=s denial of
a TRO.  Accordingly, we hold that
Spiritas is entitled to mandamus relief to preserve its right to pre-annexation
arbitration pending a hearing on its request for temporary injunctive relief.

Standing








The Town
challenges Spiritas=s standing
to bring this original proceeding challenging the Town=s fast-track annexation proceedings in this case.  The Town confuses Spiritas=s ability to challenge procedural irregularities in annexation that
are not expressly statutorily created with the right in section 43.052(i),
which was expressly granted to private landowners by the legislature.  See Pearce, 33 S.W.3d at 417; see
also JNC Partners Denton LLC, 190 S.W.3d at 793; Hughes, 153 S.W.3d
at 713-14.[18]  Accordingly, we hold that Spiritas has
standing to bring this original proceeding and the underlying suit.

Separation
of Powers

The Town
also argues that neither the trial court nor this court could grant Spiritas=s requested relief because to do so would violate the separation of
powers doctrine as set forth in the Texas Constitution by preventing a
legislative body from acting pursuant to its constitutional and statutory
authority.  See Tex. Const. art. II, ' 1.  According to the Town,
because A[t]he power to annex is committed to the political branches of
government . . . [and] it is a legislative prerogative,@ see Alexander Oil Co., 825 S.W.2d at 436, any attempt to
enjoin the Town from enacting the proposed annexation ordinance would be a
violation of the separation of powers doctrine. 








The enactment of an ordinance
by the legislative body of a city is a sovereign act of government.  Pinnell, 207 S.W.3d at 417; City of
Dallas v. Couchman, 249 S.W. 234, 239 (Tex. Civ. App.CDallas 1923, writ ref=d).  Because our system of
government is crafted to have three separately defined branches of government, Ano one of them, and least of all the judicial department, should
attempt to exceed the limits set about it and invade by such interference the
domain of another.@  Pinnell, 207 S.W.3d at 417 (quoting Couchman,
249 S.W. at 239).  The ability of a court
to enjoin the future enactment of ordinances, including annexation ordinances,
has therefore long been strictly circumscribed, as evidenced by the following
quotation:

As before
stated, the record clearly establishes that the ordinance has not been finally
enacted, and that it is still pending before the board of commissioners, to be finally
considered and acted upon.  The decree of
the court, therefore, enjoins a legislative act of the board of
commissioners.  It is well settled . . .
.  that the enactment of a void ordinance
will not be enjoined, although its invalidity clearly appears, unless it also
clearly appears that the mere enactment of the ordinance of itself will work
irreparable injury without the intervention of some wrongful act under its
authority.  

Id. (quoting Couchman,
249 S.W. at 239).  Restraining passage of
an ordinance is a legislative act, and such restraint cannot be exercised by
the courts.  Id.; City of
Monahans v. State ex rel. Cook, 348 S.W.2d 176, 179 (Tex. Civ. App.CEl Paso 1961, writ ref=d n.r.e.).








A sole exception to this
general rule exists when irreparable injury will result from the mere passage
of the ordinance.  Pinnell, 207
S.W.3d at 418; Couchman, 249 S.W. at 239.  More is required than the mere enactment of
the void ordinance, even one invalid on its face; it must also clearly appear Athat the mere enactment of the ordinance of itself will work
irreparable injury without the intervention of some wrongful act under its
authority.@  Pinnell, 207 S.W.3d at 418; Couchman,
249 S.W. at 239.  The fact that an
ordinance is void alone works no injury. 
Pinnell, 207 S.W.3d at 418; Couchman, 249 S.W. at
239.  Only after acts are impending or
steps are already being taken to directly cause harm does the basis for relief
exist, and only then may the authority of a court be invoked to restrain the
injury.  Pinnell, 207 S.W.3d at
418; Couchman, 249 S.W. at 239. 
When passage of the ordinance will cause no irreparable harm or injury
beyond the power of redress by subsequent judicial proceedings, judicial
interference is not warranted, even if the proposed ordinance disregards some
constitutional restraint.  Pinnell,
207 S.W.3d at 418; City of Houston v. Houston Gulf Coast Bldg. & Constr.
Trades Council, 697 S.W.2d 850, 852 (Tex. App.CHouston [1st Dist.] 1985, no writ).








Here, the irreparable harm to
Spiritas is clear:  if the Town were to
annex the property under fast-track annexation procedures before Spiritas was
able to have a hearing on its request for temporary injunctive relief, which is
what the Town has expressly stated it intends to do, Spiritas would lose its
statutory right to pre-annexation arbitration under section 43.052(i)
altogether. Accordingly, we believe that this situation falls within the
exception to the general rule and that granting Spiritas=s requested TRO relief here does not violate the separation of powers
provision in the Texas Constitution.








According to the Town, this
interpretation of state law is erroneous because A[t]he procedures to provide service plan details are merely procedural
matters that do not affect in any way the Town=s authority to annex@ and that A[e]ven if
[Spiritas=s] concerns
about the Town=s annexation
procedures were correct (which the Town strenuously denies), this Court cannot
violate the . . . separation of powers doctrine and issue
any order to prevent a governmental body from exercising its legislative
prerogative in an annexation context.@  But the Town=s position would render section 43.052(i)=s arbitration provision meaningless. 
Faced with a landowner=s attempt to assert its statutory right to arbitrate a disputeCand, thus, attempt to require a municipality to include property
within its three-year annexation plan before it is annexed according to
fast-track proceduresCa
municipality could simply refuse to arbitrate and complete fast-track
annexation proceedings, leaving a landowner with no choice but to seek a quo
warranto proceeding or attempt to disannex the property under the procedures
set forth in chapter 43.  Because Texas
public policy favors arbitration,[19]
it would make little sense to conclude that the legislature specifically
granted a private landowner a right to pre-annexation arbitration without the
ability to enforce that right.  We cannot
construe a statutory provision to lead to an absurd result if the provision is
subject to another more reasonable interpretation.  C & H Nationwide, Inc. v. Thompson,
903 S.W.2d 315, 322 n.5 (Tex. 1994), abrogated on other grounds by Battaglia
v. Alexander, 177 S.W.3d 893 (Tex. 2005); Sharp v. House of Lloyd, Inc.,
815 S.W.2d 245, 249 (Tex. 1991); Astoria Indus. of Iowa, Inc. v. SNF, Inc.,
No. 02-05-00315-CV, 2006 WL 2986540, at *4 (Tex. App.CFort Worth Oct. 19, 2006, no pet. h.). 
Accordingly, we hold that our exercise of jurisdiction in this case does
not violate the separation of powers provision set forth in the Texas
Constitution.

Conclusion








Having granted Spiritas=s motion for leave
to extend the page limitation on its reply brief, and the Town=s motion for leave
to file a supplemental response, and having concluded
that the trial court should have issued a TRO to maintain the status quo
pending an evidentiary hearing on, and determination of the merits of, Spiritas=s request for temporary injunctive reliefCi.e., to preserve Spiritas=s statutory right to pre-annexation arbitration pending such a hearing
and determination of the merits of Spiritas=s request for temporary injunctive reliefCwe conditionally grant relator=s petition for writ of mandamus and order the trial court to vacate
its order denying the TRO and to issue a TRO in accordance with this opinion
and the requirements of rule 680, including the time periods included therein
for holding a hearing on Spiritas=s request for temporary injunctive relief.  See Tex.
R. Civ. P. 680.  The TRO should
preclude the Town or any of its agents from taking any action to annex Spiritas=s property until the trial court holds an evidentiary hearing on, and
determines the merits of, Spiritas=s temporary injunction request. 
A writ of mandamus will issue only if the trial court fails to comply
with this order.  This court=s emergency stay order of December 19, 2006 and the trial court=s January 5, 2007 order granting the parties agreed temporary
injunctive relief pending this court=s determination of this original proceeding shall remain in effect
until the trial court issues the TRO described above, at which time our
emergency stay will be automatically lifted without need for any further order.


 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 








DELIVERED:
March 22, 2007.











[1]We grant Spiritas=s motion for leave to extend the
page limitation on its reply brief and the Town=s motion for leave to file a
supplemental response.  Consequently, we
deny Spiritas=s motion to strike the Town=s supplemental response.





[2]Section 42.021 of the local
government code provides that

 

[t]he extraterritorial jurisdiction
of a municipality is the unincorporated area that is contiguous to the
corporate boundaries of the municipality and that is located:

 

(1) within one‑half mile of
those boundaries, in the case of a municipality with fewer than 5,000
inhabitants;

(2) within one mile of those
boundaries, in the case of a municipality with 5,000 to 24,999 inhabitants;

(3) within two miles of those
boundaries, in the case of a municipality with 25,000 to 49,999 inhabitants;

(4) within 32 miles of those boundaries, in the
case of a municipality with 50,000 to 99,999 inhabitants;  or

(5) within five miles of those
boundaries, in the case of a municipality with 100,000 or more inhabitants. 

 

Tex. Loc.
Gov=t Code Ann. ' 42.021 (Vernon 1999).





[3]For ease of reference, we will
refer to annexation under section 43.052(h)(1), i.e., annexation of an Aarea contain[ing] fewer than 100
separate tracts of land on which one or more residential dwellings are located
on each tract@ without inclusion in a
municipality=s three-year annexation plan, as Afast-track annexation.@ 
Id. ' 43.052(h)(1).





[4]The tracts are separated from the
current territorial limits of the Town by Lake Lewisville and are also located
several traveling miles from the Town=s current emergency facilities.





[5]These properties are not included
in the Town=s three-year annexation plan.





[6]See id. ' 43.0561(a).





[7]Spiritas=s agreed motion to supplement the
record with a copy of this order is granted.





[8]We note that this proceeding has
been pending for three months and that the parties agreed temporary injunctive
relief has been in effect since January 5, 2007.  Had the parties instead agreed to the relief
requested by SpiritasCa TRO pending an evidentiary
hearing on Spiritas=s request for temporary injunctive
reliefCthe longest that agreed relief
would have been effective without the Town=s consent or good cause shown would have been fourteen
days.  See Tex. R. Civ. P. 680.





[9]Section 43.052(h) provides nine
exceptions to the requirement of inclusion of property in a three-year
annexation plan; if no exception is applicable to a particular property, then,
procedurally, it must be included in a municipality=s three-year plan before it is
annexed.  Tex. Loc. Gov=t Code
Ann. ' 43.052(h).





[10]Although it is unlikely that the
Town could complete such fast-track annexation proceedings before such a
hearing could be held, it could take steps toward doing so, which would be in
violation of the TRO that we hold below Spiritas is entitled to.





[11]Through quo warranto proceedings, Athe State acts to protect itself
and the good of the public generally, through the duly chosen agents of the
State who have full control of the proceeding.@ 
Alexander Oil Co. v. City of Seguin, 825 S.W.2d 434, 436 (Tex.
1992); City of Port Isabel v. Pinnell, 207 S.W.3d 394, 405 (Tex. App.CCorpus Christi 2006, no pet.).  Therefore, in a quo warranto proceeding, the
State must bring the action to question irregular use of the delegated
annexation authority.  Alexander Oil
Co., 825 S.W.2d at 436; Pinnell, 207 S.W.3d at 408. 





[12]Act of May 30, 1999, 76th Leg.,
R.S., ch. 1167, '' 4, 17, 1999 Tex. Gen. Laws 4074,
4076-77, 4090.





[13]The Town attempts to characterize
the arbitration right as a merely procedural right pertaining only to the
features that will be included in the service plan for the property to be
annexed; however, it is clear from the plain language of section 43.052(i) that
the arbitration right provided by that section encompasses the broader,
threshold question of whether a municipality must include the property subject
to arbitration within its proposed three-year annexation plan in the first
place (i.e., before service plan features are even an issue).  Tex.
Local Gov=t
Code Ann. '
43.052(i).





[14]The
Town contends that JNC Partners and Hughes are inapplicable here
because those cases dealt with the municipality=s
refusal to arbitrate while here the Town has agreed to arbitrate.  But as we have explained above, the Town has
not agreed to refrain from the fast-track annexation process pending
arbitration; thus, the reasoning behind these cases applies.  Moreover, the Town=s
arguments based on the merits of the temporary injunctive relief in JNC
Partners fail as well because, here, we are not concerned with the merits
of Spiritas=s
request for temporary injunctive relief but rather whether the status quo (no
fast-track annexation) should be preserved pending the trial court=s
determination of the merits of Spiritas=s requested temporary
injunctive relief.





[15]See Tex.
Gov=t Code Ann. ' 311.021(2) (Vernon 2005); Pilgrim=s Pride Corp. v. Cernat, 205 S.W.3d 110, 117-18 (Tex. App.CTexarkana 2006, pet. denied) (ABecause we are to presume that >the entire statute is intended to
be effective,= . . . , we also presume that each
section in a statutory scheme is intended to harmonize within the scheme.@).





[16]We note that the supreme court has
issued a stay order in JNC Partners, as did this court while that appeal
was pending here.  JNC Partners Denton
LLC, 190 S.W.3d at 792.





[17]The Town argues that Spiritas
cannot prove the merits of its entitlement to arbitration; however, these
arguments are not applicable for two reasons: 
(1) the issue before us is whether the trial court should have granted a
TRO to protect the status quo until Spiritas could have an evidentiary
hearing at which it attempted to prove the allegations it plead in support of
temporary injunctive relief, and (2) the Town has already agreed to
arbitration.  Thus, the issue here hinges
on whether Spiritas is entitled to protect its right to pre-annexation
arbitration until the trial court can hold a hearing on its request for
temporary injunctive relief.





[18]The Town cites City of San
Antonio v. Summerglen Property Owners Ass=n, in support of its contention that Spiritas lacks
standing.  185 S.W.3d 74, 85-86 (Tex.
App.CSan Antonio 2005, pet.
denied).  However, that case involved
property that was already included in the city=s three-year annexation plan; thus,
the arbitration right set forth in section 43.052 was not applicable.  See id. at 79.





[19]See In re AIU Ins. Co., 148 S.W.3d 109, 122 (Tex. 2004)
(orig. proceeding); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 268
(Tex. 1992) (orig. proceeding).